SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

JUL 2 9 2005

J. T. NOBLIN, CLERK
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

KEITH BROWN                                      **PETITIONER**

V.

CIVIL ACTION NO. 3:02-cv-298WN
CRIMINAL NO. 3:92-cr-128WN

UNITED STATES OF AMERICA                         **RESPONDENT**

## ORDER DENYING BOTH § 2255 MOTION AND MOTION FOR PERMISSION TO APPEAL

Before the court is the petitioner's motion for permission to file an appeal of his conviction to the United States Court of Appeals for the Fifth Circuit. The petitioner elected to face trial on a five-count indictment which included charges of engaging in monetary transactions in property derived from specified unlawful activity in violation of Title 18 U.S.C. § 1957;[1] use of a communication facility in a drug offense in violation of Title 21 U.S.C. § 843(b);[2] attempt and conspiracy in violation of Title 21 U.S.C.

---

[1] Title 18 U.S.C. § 1957(a) provides that, "(w)hoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b)." Subsection (b)(1) states that, "[e]xcept as provided in paragraph (2), the punishment for an offense under this section is a fine under title 18, United States Code, or imprisonment for not more than ten years or both."

[2] Title 21 U.S.C. § 843(b) provides that, "[i]t shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication."

§ 846;[3] and operating a continuing criminal enterprise, in violation of Title 21 U.S.C.

§ 848.[4]  The petitioner also faced forfeiture of property pursuant to Title 18 U.S.C. §

853.[5]  This court proceeded to trial of this case.  Then, as the testimony unfolded, the

petitioner chose to forego any further trial proceedings, to waive his constitutional

rights, and to enter a plea of guilty.   This court accepted his decision to enter a plea

and ended the trial.  Now, having entered a plea wherein he agreed not to appeal his

sentence or mount a collateral attack upon his sentence, the petitioner seeks to

pursue both an appeal and habeas corpus relief.  For the reasons that follow, this

---

[3]Title 21 U.S.C. § 846 provides that, "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

[4]Title 21 U.S.C. § 848(a) provides that, "[a]ny person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment, to a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $2,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, and to the forfeiture prescribed in section 853 of this title; except that if any person engages in such activity after one or more prior convictions of him under this section have become final, he shall be sentenced to a term of imprisonment which may not be less than 30 years and which may be up to life imprisonment, to a fine not to exceed the greater of twice the amount authorized in accordance with the provisions of Title 18, or $4,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, and to the forfeiture prescribed in section 853 of this title." Subsection (b) provides that, "[a]ny person who engages in a continuing criminal enterprise shall be imprisoned for life and fined in accordance with subsection (a) of this section, if -- (1) such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders; and (2)(A) the violation referred to in subsection (c)(1) of this section involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title, ... ."

[5]Title 21 U.S.C. § 853(a) provides that, [a]ny person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law -- (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;  (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and (3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise."

court is persuaded that the petitioner's motion for an appeal and his motion to vacate or modify his sentence should be denied.

## PERTINENT FACTS

At the time the trial ended with the petitioner's decision to enter a plea, one of the witnesses, Lonnie Blalock, had testified about his dealings with the petitioner, that the petitioner had engaged in the transportation and distribution of marijuana between Texas, Louisiana and Mississippi, paying a supplier named Miguel Zamora, and transporting the marijuana back to Mississippi. The witness said he communicated with the petitioner at his place of business in Forest, Mississippi. The witness testified that he had delivered money to Texas while working for the petitioner, and that he had delivered as many as twenty 100 pound loads of marijuana from Texas to Mississippi in furtherance of the petitioner's marijuana enterprise. This witness also testified that the co-defendant in this case, one Perrin Starks, an employee of the petitioner's music store, had been arrested while delivering as much as $130,000.00 to purchase marijuana in Texas. The witness acknowledged that the money belonged in part to himself and in part to the petitioner. The witness also testified that he had provided this money through the petitioner's enterprise to obtain marijuana to sell in Mississippi.

Another witness, Ronald Frost, also described his association with the petitioner in trafficking in marijuana between 1994 and 1999. The witness stated that he would call the petitioner and place his order for marijuana, and that he had ordered as much as 300 pounds of marijuana from the petitioner, usually 15 to 20 pounds at a time.

Yet another witness, Miguel Zamora, testified that he had supplied the petitioner with marijuana at least eight times in eight 100 pound loads in 1998. According to

3

Zamora, the petitioner would send someone else with money to pay for the marijuana and deliver it to the petitioner in Mississippi.

## THE PETITIONER DECIDES TO ENTER A GUILTY PLEA

The testimony against the petitioner was not limited to just these particular incidents testified to by these witnesses.  The above recited testimony, however, establishes the petitioner's involvement with at least 3100 pounds of marijuana in a continuing criminal enterprise which he supervised.  Faced with this testimony, and with little, if anything, to offer in rebuttal, the petitioner decided to stop the trial and to enter a plea of guilty.  Subsequently, the petitioner and the United States agreed that the petitioner would enter a plea of guilty to the charges of conspiracy to possess with intent to distribute marijuana in violation of Title 21 U.S.C. § 846, and money laundering through his place of business in violation of Title 18 U.S.C. §1956(a)(1)(A)(i).[6]

The petitioner entered his plea subject to the terms of a Memorandum of Understanding with the United States Attorney wherein the petitioner agreed not to appeal his sentence or to seek habeas corpus relief pursuant to Title 28 U.S.C. §

---

[6]Title 18 U.S.C. § 1956(a)(1)(A)(i) provides that, "(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity– (A)(i) with the intent to promote the carrying on of specified unlawful activity ... ."

2255.[7]  The petitioner and the United States Attorney stipulated that the petitioner had

been responsible for transactions involving at least 900 pounds of marijuana.  Later,

the defendant sought to contest that amount at sentencing.  While this court agreed to

allow the petitioner to contest the amount of marijuana for sentencing purposes, this

court ultimately accepted the parties' original stipulation based on the testimony the

court had heard at trial.

### REVIEW OF THE PETITIONER'S SENTENCING

At sentencing the petitioner agreed to all the terms of his sentence, and

declared to this court under oath that he was satisfied with the performance of his

attorney.[8]  This court informed the petitioner that it was not bound by the terms of the

---

[7]THE COURT: Now, you have also in that (plea) agreement given up certain rights.  Do you understand that ordinarily a defendant has a right to appeal a conviction to a next higher court?  Do you understand that?

DEFENDANT BROWN: Yes, Sir.

THE COURT: Do you understand that you are giving up that right?

DEFENDANT BROWN: Yes, Sir.

THE COURT: Therefore, you can't attack whatever sentence I impose on you to any higher court.  Do you understand that?

DEFENDANT BROWN: Yes, Sir.

THE COURT: Or even to this court.  You understand that?

DEFENDANT BROWN: Yes, Sir.

THE COURT: To no court that you will be able to resort to attack the sentence.  Do you understand that?

DEFENDANT BROWN: Yes, Sir.

[8]THE COURT: Now, the law requires that you be adequately and competently represented by your attorneys.  Have you had time to discuss your case with your lawyer, Mr. Brown?

Memorandum of Understanding and could impose a sentence that exceeded the recommendation of the United States. The petitioner said he understood this.

The petitioner and his attorney announced to the court that they hoped for a total offense level of 30. They acknowledged that the Guideline incarceration range for a Criminal History category of two was from 108 to 135 months when the total base offense level was 30. The United States Probation Office recommended a sentence of 151 months based on a base offense level of 33 and a Criminal History category of two. This court then gave the petitioner credit for acceptance of responsibility, which lowered his base offense level to 31, and lowered his Criminal History category to one. Thus, the Guideline range was 108 to 135 months.

This court imposed a period of incarceration of 113 months. The imposition of 113 months by this court is well within the lower 25% of this Guideline range, well below the maximum sentence which could have been imposed, and complies with the

---

DEFENDANT BROWN: Yes, Sir.

THE COURT: Are you satisfied with the amount of time that your attorney has spent with you and his advice to you, Mr. Brown?

DEFENDANT BROWN: Yes, Sir.

THE COURT: Do you understand that now is the time to make any complaints at all about the way your attorney has handled your case, Mr. Brown?

DEFENDANT BROWN: Yes, Sir.

THE COURT: Now, do ... you have any complaints at all about the way your attorney has handled your case? You, Mr. Brown?

DEFENDANT BROWN: No, Sir.

recommendation of the United States.[9]  Thus, the petitioner was sentenced to serve

113 months in the custody of the United States Bureau of Prisons and required to

serve a term of supervised release for five years.   The other counts against the

petitioner were dismissed and the petitioner was not required to pay a fine.

The maximum sentence for violation of Title 21 U.S.C. § 846 is a term of

incarceration of 40 years (480 months) and a fine of up to two million dollars.  The

maximum sentence for violating Title 18 U.S.C. § 1956(a)(1)(A)(1) is a term of

incarceration of 20 years (240 months) and a fine of up to $500,000.00.  Clearly, the

petitioner was sentenced to a term of incarceration well below the statutory maximum

which this court could have imposed on just the two counts to which the petitioner

entered his guilty plea.  The petitioner received the benefit of dismissal of three

criminal counts against him, and he was spared the imposition of a fine.  This court

finds that the petitioner received substantial benefit from entering his guilty plea.

### THE PETITIONER DECIDES TO APPEAL AND SEEK HABEAS RELIEF

Now, the petitioner, who promised not to appeal his sentence and not to seek

post-conviction relief, has broken that promise and seeks to undo all that was done in

---

[9]This sentence was imposed pursuant to Chapter 5, Part A of the United States Sentencing Guidelines which were mandatory at the time of this sentencing.  Now, the United States Supreme Court in the case of *United States v. Booker/Fanfan*, ___ U.S. ___, 125 S.Ct. 738, 159 L.Ed.2d 838 (2005), has ruled that the Sixth Amendment to the United States Constitution is violated when a district court, acting pursuant to the Sentencing Reform Act and the guidelines, imposes a sentence greater than the maximum authorized by the facts found by the jury alone.  Additionally, the Supreme Court concluded that enhancing sentences based on facts found by the court alone, and not beyond a reasonable doubt by a jury, violated the Sixth Amendment imperative that any fact other than a prior conviction which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  *Id.* at 756.

arriving at a fair and just sentence in his case.  First, the petitioner has returned to this court with the instant motion for permission to appeal his conviction to the United States Court of Appeals for the Fifth Circuit.  A § 2255 motion cannot precede an appeal or be used as a substitute for a direct appeal.  *United States v. Addonizio*, 442 U.S. 178, 184, 99 S.Ct. 2235, 2240 (1979).  So, the petitioner first seeks to be permitted to appeal.  The petitioner also seeks appeal to avoid the consequences of a waiver.  The United States Supreme Court has found that failure to raise a ground for relief on direct appeal results in a waiver of that ground unless petitioner can show cause and prejudice, or actual innocence.  *United States v.. Frady*, 456 U.S. 152, 167, 192 S.Ct. 1584, 1594 (1982);  and *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611 (1998).   The petitioner, however, has shown no cause or prejudice which would permit an appeal, and he cannot show actual innocence.

Petitioner also has proceeded to file a motion to vacate and set aside or to correct his sentence pursuant to Title 28 U.S.C. § 2255[10] while his motion to be permitted to appeal is pending.   Petitioner says that he had to file this motion in order to avoid the operation of the time limitation for filing habeas corpus claims,[11] notwithstanding his prior agreement.

---

[10]Title 28 U.S.C. § 2255 provides in part that, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move to vacate, set aside or correct the sentence."

[11]The Antiterrorism and Effective Death Penalty Act (AEDPA) limits the time period allowed for filing a federal habeas corpus action. Section 2244(d)(1)(A) sets forth the general rule that a federal habeas petition must be filed within one year after the petitioner's conviction becomes final.  Flanagan v. Johnson,154 F.3d 196, 198 (5th Cir. 1998).

Additionally, the petitioner claims that his sentencing was imposed incorrectly because this court accepted the parties' stipulation regarding the amount of marijuana for sentencing purposes. According to the petitioner, an "incorrect sentence" opens the door to this challenge under § 2255.

Finally, the petitioner seeks to vacate his sentence because of a three level enhancement of the petitioner's offense level which was imposed for his managing the conspiracy to possess with intent to distribute marijuana. Petitioner contends that the United States agreed not to enhance his sentence and that this enhancement violated his Memorandum of Understanding.

### A. The Guilty Plea Was Knowing and Voluntary

The petitioner entered a plea of guilty and agreed not to appeal his conviction.[12] A guilty plea is more than a mere confession; it is an admission that the defendant committed the charged offense. *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir. 1991), citing *North Carolina v. Alford*, 400 U.S. 25, 32, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). As a general rule, therefore, a convicted defendant may not collaterally attack a voluntary and intelligent guilty plea. Id., citing *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984); *Tollett v. Henderson*, 411 U.S. 258, 266-67, 93 S.Ct. 1602, 1607-08, 36 L.Ed.2d 235 (1973).

---

[12]The plea agreement in the instant case contains a waiver of post-conviction remedies. The agreement provides, in relevant part, that the petitioner, "expressly waives the right to appeal his sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742, and further agrees not to contest his sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255."

Here, the evidence clearly shows that the petitioner's waiver was both knowing and voluntary. His signed plea agreement contains an express waiver of his right to appeal. During the petitioner's plea hearing, this court summarized the indictment and noted the maximum sentences under the applicable statutes. The petitioner indicated that he understood the ramifications of pleading guilty. This court also advised the petitioner of the terms of the plea agreement, including the waiver of the rights to challenge his sentence in any court for any reason, and determined that the petitioner understood the nature of the constitutional rights that he was forfeiting. All this indicates that the petitioner entered a knowing and voluntary plea. *See Frank v. United States*, 501 F.2d 173, 175 (5th Cir. 1973). So, absent any indication that the waiver provision in question was involuntary, the Fifth Circuit will enforce it. *United States v. Cuevas - Andrade*, 232 F.3d 440, 446 (5th Cir. 2000). Therefore, the petitioner's motion for permission to appeal his sentence to the United States Circuit Court of Appeals for the Fifth Circuit must be denied.

### B. The Guilty Plea and Waiver - Collateral Attack Foreclosed?

The petitioner agreed not to seek habeas corpus relief pursuant to Title 28 U.S.C. § 2255. A knowing and voluntary "guilty plea generally waives all claims of constitutional violation occurring before the plea." *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 762, 102 L.Ed. 927 (1989). Furthermore, the Fifth Circuit recognizes that one may waive the right to proceed with a collateral attack against one's sentence under § 2255. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (an informed and voluntary waiver of post-conviction relief is effective to bar

such relief. *Such a waiver may not always apply to a collateral attack based upon ineffective assistance of counsel*) (emphasis added).

In *Wilkes*, the United States Court of Appeals for the Fifth Circuit recognized the validity of a waiver of post-conviction relief as part of a plea bargain, stating that, "[a]s a general matter, ... an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *Id.*, at 934. However, the Fifth Circuit noted that such a waiver *may* not bar a collateral attack based upon ineffective assistance of counsel (emphasis added). *Id.* This qualifying statement, while not dispositive of the question of whether one may waive claims of ineffective assistance of counsel, has led many district courts to treat the *Wilkes* decision as a warning to allow defendants to raise ineffective assistance of counsel claims in § 2255 motions, despite the presence of a waiver, out of an abundance of caution.[13] Then, in *United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002), the Fifth Circuit held that an ineffective assistance claim could survive waiver, "only when the claimed assistance directly affected the validity of that waiver or the plea itself."

In *White*, the Fifth Circuit states that it had "not yet decided whether all ineffective assistance of counsel claims survive a valid waiver of appeal, although we have outlined the boundaries of the question. In *United States v. Wilkes*, ..., this court

---

[13]*United States v. Teshima-Jiminez*, 1999 WL 600326 (E.D.La. Aug. 5, 1999) (defendant waived his right to file a § 2255 motion, but, the district court, citing *Wilkes*, still considered the defendant's claims that his counsel was ineffective at sentencing for failing to obtain a downward departure and failing to promptly and adequately file objections to the PSR). And *see United States v. Kiefer*, 1998 WL 388592 (E.D.La. July 9, 1998) (court considered defendant's § 2255 claims that he received ineffective assistance of counsel because his attorney did not file objections to the PSR, notwithstanding waiver).

held that an informed and voluntary waiver of the right to file a 28 U.S.C. § 2255

motion will be enforced.  At the same time, we joined the Ninth Circuit in musing (in

dictum ) that ineffective assistance of counsel claims may be an exception to that rule.

*Id.* (citing *United States v. Abarca*, 985 F.2d 1012 (9th Cir. 993)).  The following year,

in *United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995), we held that a waiver

of appeal may not be enforced against a section 2255 petitioner who claims that

ineffective assistance of counsel rendered that waiver unknowing or involuntary."

*United States v. White*, 307 F.3d at 341.  The Fifth Circuit concluded that it would, "ask

whether the plea or waiver itself was knowing and voluntary, and whether the issue

challenged on appeal may properly be the subject of waiver.  If the answer to both

questions is "yes," then the guilty plea sustains the conviction and sentence and the

waiver can be enforced.  *Id.,* at 343-34.

     In the instant case, the answer to the first question is yes.  The petitioner's

waiver in the Memorandum of Understanding was knowing and voluntary, as this court

already has found.   Thus, the court must determine if the other challenged issues

properly may be subject to the waiver.

### C. Issues Pertaining to Ineffective Assistance

     The standard for determining the effectiveness of counsel during a guilty plea

proceeding is the same two-prong test set forth by the United States Supreme Court in

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);  *Hill*

*v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985);  and *DeVille*

*v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994).  A defendant must show that counsel's

representation fell below an objective standard of reasonableness, and that there is "'a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' ". *Id*. The defendant must affirmatively prove, and not merely allege, prejudice as the result of his attorney's performance. *DeVille v. Whitley*, 21 F.3d at 659, citing *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir.) (habeas petitioner has burden of proving that he is entitled to relief), *cert. denied*, 476 U.S. 1143, 106 S.Ct. 2253, 90 L.Ed.2d 699 (1986).

First, the petitioner says his counsel should have filed a notice of appeal and that his failure to do so is ineffective assistance.   Certainly, this is an issue which may be subject to waiver.  Moreover, inasmuch as the petitioner entered a plea of guilty and agreed not to appeal his sentence, there was no reason for petitioner's counsel to file a notice of appeal. In *United States v. Wilkes*, 20 F.3d at 653, the Fifth Circuit upheld the defendant's waiver of his appeal rights and denied his claim of ineffective assistance based on counsel's failure to file an appeal.  Thus, pursuant to *Wilkes*, the petitioner's first ineffective assistance of counsel claim is without merit, even if it was not subject to waiver.

Secondly, petitioner says his counsel was ineffective because he did not conduct pretrial investigations; because he failed to research the law; and failed to develop a valid sentencing strategy which would establish that the petitioner was not a supervisor and that the amount of marijuana was not 700 to 999 kilograms; and failed to explain the consequences of the waiver; and failed to tell the petitioner that he could have entered into a Memorandum of Understanding that contained no waiver; and, finally, failed to discredit the government's case by calling co-defendants who would contradict the evidence offered by the government.

13

This case proceeded to trial, then the petitioner agreed to enter a plea of guilty. At the sentencing hearing petitioner's counsel argued successfully that the petitioner had withdrawn form the marijuana trafficking conspiracy between 1996 and 1998, thereby convincing the court to reduce the petitioner's Criminal History category from two to one, and the reduction resulted in a lower sentence of at least 38 months. Counsel objected to certain documents and argued against legal interpretation offered by the United States. Counsel already had the trial testimony of three conspirators to establish that the petitioner had not participated in the conspiracy between 1996 and 1998. The petitioner now contends that his trial counsel also should have shown that the petitioner was not a manager or supervisor of that portion of the conspiracy in which he took part.

The petitioner's counsel attempted to show that the petitioner was not a supervisor or manager in the conspiracy. The petitioner testified on this very point. This court heard the petitioner's testimony and was not convinced that the petitioner had no supervisory or managerial role, even if he was not the organizer of the conspiracy. The petitioner's contention that his counsel failed to attack this point is without merit. The petitioner's contention that counsel might have tried some other approach also is without merit.

Even though there is no merit to the contention that the petitioner's counsel failed to attack the matter of the petitioner's supervisory role, the petitioner contends that the United States breached the plea agreement by seeking an enhancement to the petitioner's sentence based on this supervisory role. Thus, the petitioner says the waiver in his plea agreement was not knowing and voluntary because he did not fully

14

understand the consequences of his supervisory or managerial role.  Arguably, this issue is one which may be viewed as not subject to the petitioner's waiver since it goes to the validity of the waiver as to whether it was knowing and voluntary, and the court shall address it.

### THE PETITIONER WAS A MANAGER/SUPERVISOR

The petitioner insists that he was not a manager supervisor.  The three level enhancement about which the petitioner complains is based on Section 3B1.1(b)[14] of the United States Sentencing Guidelines which directs that a sentence for conspiracy *will be enhanced* when it involves five or more participants and the defendant was a manager or supervisor, but not a leader or organizer, of the conspiracy.  This court reviewed the petitioner's Presentence Report and agreed with the United States Probation Office that these elements are present in the instant case.

The petitioner contends that he should not have received an enhancement as a manager and/or supervisor of the conspiracy in question.  This court heard the testimony offered to the jury through witnesses who had participated in marijuana trafficking with the petitioner that the petitioner directed the payment for and transportation of the marijuana.  These witnesses contacted the petitioner and were directed in their activities by him.

---

[14]Section 3B1.1(b) provides that, "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was other- wise extensive, increase by 3 levels."

On the day the petitioner determined to enter a plea of guilty, this court carefully read the petitioner's indictment to him. The indictment charged the petitioner and one Perrin Starks with conspiring with each other and several others to distribute 1000 kilograms of marijuana. The indictment declared that the petitioner and his co-conspirators Miguel Zamora, Ronald Frost, Lonnie Blalock, Arthur Felix and others transported marijuana from Houston, Texas to Forest, Mississippi in exchange for $127,480.00. The United States offered to prove that this transaction was directed by the petitioner via telephone discussions with Miguel Zamora in November of 1998, January of 1999, and February of 1999. The petitioner's telephone records verified these calls. Furthermore, the United States recounted another transaction between the petitioner and Zamora where the petitioner arranged to have $127,000.00 delivered from Forest, Mississippi, to Zamora in Texas in order to pay for more marijuana. This money delivery trip took place in January of 1999, in a car rented for that purpose and driven by Perrin Starks at the direction of the petitioner.

The petitioner's Presentence Report stated that Mississippi Bureau of Narcotics agents had obtained the Texas telephone records of Miguel Zamora and determined that Zamora had contacted the petitioner's place of business in Mississippi, the Empress of Forest, Inc., on several occasions and repeatedly had paged the petitioner on a pager belonging to the petitioner's girlfriend, in order to carry out the transactions in question. Thus, the petitioner's role as that of a manager and coordinator of the transaction was implied by the necessity to contact the petitioner to send the money and to receive the marijuana, and the use of the petitioner's place of business as a cover for the illegal transactions in question. Moreover, the petitioner exercised

16

control over Perrin Starks when he sent Starks to make the necessary money deliveries

The United States Attorney read into the record the above assertions. The petitioner and his attorney both acknowledged that the petitioner had read and had understood the Presentence Report. This court asked the petitioner, "[n]ow then, I need to ask you, Mr. Brown, whether you heard what he (the Assistant Attorney General) had to say. Did you? The petitioner responded, "yes, sir." This court then asked the petitioner if he disagreed with any of the statements and he responded that he disagreed with the "96 part." However, all the charges against the petitioner involved a time period from 1998 to 1999. These charges had nothing to do with any activity in 1996. The petitioner's attorney clarified for the petitioner that he was not entering a plea of guilty to any activity which may have taken place in 1996. This court then informed the petitioner that he would be giving up his constitutional rights to contest any of these charges if he admitted his guilt. The petitioner chose to waive his constitutional rights and entered a guilty plea.

So, the petitioner admitted to the truth of the charges against him in open court under oath. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *United States v. Lampaziarie*, 251 F.3d 519, 524 (5th Cir. 2001). This court has accepted the assertions of the United States as factual and factual findings of this court are not clearly erroneous if they are "plausible in light of the record as a whole." *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998). The Fifth Circuit will uphold a district court's application of the United States Sentencing Guidelines if it results from a legally

17

correct application of the Guidelines to factual findings that are not clearly erroneous. *United States v. Ponce*, 917 F.2d 841, 842 (5th Cir.1990), *cert. denied*, 499 U.S. 940, 111 S.Ct. 1398, 113 L.Ed.2d 453 (1991).

The petitioner refers to himself as "merely a go-between" and not the supervisor;  however,  the role of "middle-man" is not one to be taken lightly.  The Commentary to Section 3B1.1 states that, "to qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants.  An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization."  The petitioner says that he had no control over Zamora, or Blalock, or any of the other conspirators, and did not encourage them to engage in drug trafficking.  The record established at trial undermines the petitioner's attempt to minimize his role.  Moreover, the petitioner has admitted his guilt, knowingly and voluntarily, and after he had the opportunity to see the direction a jury trial would take.  Inasmuch as the petitioner has admitted all the facts underlying the conspiracy charges against him, this court must deny his request for habeas corpus relief on this ground.

### THE GUIDELINES COMPUTATION WAS PROPER

Although the petitioner complains that the base offense level of 31 resulted in an improper sentence, the petitioner actually cannot show conclusively that his sentence would have been any lower with a base offense level of 30, the offense level for which the petitioner had hoped.  The petitioner argues that the three level

enhancement raised his base offense level from 30 to 33.  The petitioner seems to forget that this court reduced the base offense level of 33 two levels to 31 based on the petitioner's acceptance of responsibility.  The petitioner contends that his sentence would have been lower if the base offense level had been 30.  Clearly, the petitioner has no basis beyond speculation for making this assertion.  Even if this court had agreed to lower the base offense level from 33 to 30, the level for which the petitioner announced that he hoped, this court still could have imposed a sentence of 113 months and still would have been within the applicable Guideline range of 97 to 121 for a Criminal History category of one, or 108 to 135 for a Criminal History category of two.

At the petitioner's sentencing hearing, this court found in favor of his claim that he withdrew from the conspiracy and gave him credit for acceptance of responsibility. The sentencing recommendation of 151 months was set aside and a sentence of 113 months was imposed.  The petitioner now appears to have no recollection of these findings by the court or the success of his attorney in convincing this court to reduce his Criminal History category to one.

### THE MATTER OF UNITED STATES V. BOOKER

This court finds that *United States v. Booker/Fanfan*, ___ U.S. ___, 125 S.Ct. 738, 159 L.Ed.2d 838 (2005), does not apply to this case.   For almost two decades, sentences for federal offenses have been imposed pursuant to the Federal Sentencing Guidelines, as drafted and then revised by the United States Sentencing Commission at the direction of Congress.   *See* Sentencing Reform Act of 1984, codified as amended at Title 18 U.S.C. § 3551 et seq. and at Title 28 U.S.C.A. §§ 991-998.  Now,

the United States Supreme Court in the case of *United States v. Booker/Fanfan*, has ruled that the Sixth Amendment to the United States Constitution is violated when a district court, acting pursuant to the Sentencing Reform Act and the guidelines, imposes a sentence greater than the maximum authorized by the facts found by the jury alone. *See Booker*, Opinion of Justice Stevens for the Court at 760-61. The Court noted that by virtue of § 3553(b)(1), "[t]he Guidelines as written ... are not advisory; they are mandatory and binding on all judges" and therefore "have the force and effect of laws." *Id.* at 750. Because the Guidelines, as originally contemplated, were mandatory, the Supreme Court found no distinction of constitutional significance between the Guidelines and those state sentencing regimes it previously had evaluated and found wanting. *See Blakely v. Washington*, --- U.S. ----, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Consequently, the Supreme Court concluded that enhancing sentences based on facts found by the court alone, and not beyond a reasonable doubt by a jury, or not reflected in a plea of guilty, violated the Sixth Amendment imperative that any fact other than a prior conviction which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756. As noted above, the facts upon which this court relied to sentence the petitioner are reflected in the petitioner's guilty plea.

Furthermore, because *Booker* announces a new procedural rule, and not a substantive rule, it may be applied retroactively under *Teague* only if it is a " 'watershed rule of criminal procedure' implicating the fundamental fairness and

20

accuracy of the criminal proceeding." *Schriro v. Summerlin*, — U.S. —, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). The *Schirro* Court declared that "[a] rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural." *Id.* at 2523, quoting *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Booker* clearly affects only the manner of determining culpability. The federal Sentencing Guidelines remain in effect as written. Only Title 18 U.S.C. § 3553(b)(1), which makes their application mandatory, no longer governs. The United States Supreme Court has pointed to *Gideon v. Wainright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the case establishing a defendants' right to counsel in criminal trials for serious crimes, to illustrate the type of case that would fit the watershed exception. *See Saffle v. Parks*, 494 U.S. at 495.

## CONCLUSION

Therefore, in view of all the foregoing, the petitioner's request to appeal his conviction and sentence is denied. Additionally, this court finds that the petitioner's motion for habeas corpus relief under Title 28 U.S.C. § 2255 has been waived pursuant to the Memorandum of Understanding entered into between the United States Attorney and the petitioner. Otherwise, this court has considered the motion and finds that the petitioner has offered this court no basis for granting habeas corpus relief which is sufficient to overcome the petitioner's waiver. Thus, the petitioner's

motion to vacate and set aside or to correct his sentence filed pursuant to Title 28

U.S.C. § 2255 is denied.

SO ORDERED, this the 29th day of _July_ , 2005.

_Henry T. Wingate_
CHIEF UNITED STATES DISTRICT JUDGE

United States v. Brown, Criminal No. 3:99-cr-128WN
Civil Action No. 3:02-cv-298WS
Motions to appeal and for habeas corpus denied